# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 96-40557
Summary Calendar

OSCAR F. SANCHEZ; LILIANA SANCHEZ,

Plaintiffs-Appellees,

versus

CHARLES SWYDEN, Inspector, ET AL.,

Defendants,

WARREN K. HAYWARD, Officer, ET AL.,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

April 15, 1998

**OPINION ON PETITION FOR REHEARING**
(Opinion, January 13, 1998, 5th Cir., 1998, ____F.3d____)

Before JONES, SMITH, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The petition for rehearing is granted. The opinion reported at 131 F.3d 1144 (5th Cir. 1998) is withdrawn, and the opinion below is substituted in all respects for the withdrawn opinion.

This is a case about mistaken identity, and it comes to us on appeal from a denial of qualified immunity in a § 1983 suit brought by plaintiffs Oscar F. Sanchez (Sanchez) and Liliana Sanchez against a number of public officials.[1] Sanchez alleged that he was illegally detained for twenty-six

---

[1]The named defendants are as follows: Inspector Charles Swyden, Inspector Robert Poole, Officer Warren K. Hayward, Sergeant Michael S. Lewellen, Officer W.H. Bearden, Officer Barry J. McDermott, Sergeant P. Pohl, Police Chief Sam Nuchia, Lieutenant Frank Jackson, Captain Mark V. Mancuso, Sergeant Andrew White, Sergeant Judy Porter, Sheriff Johnny Klevenhagen, Assistant District Attorney Bill Delmore, Dispatcher Sarah Hunter, Investigator Floyd Duncan, and Sheriff

hours in violation of his due process rights. The defendants filed a motion for summary judgment, arguing that they were entitled to qualified immunity as a matter of law. The magistrate judge held that the defendants' motion should be granted. After conducting a de novo review of the record, the district court declined to follow the magistrate's recommendation, holding that the defendants were not entitled to qualified immunity because Sanchez had shown that he was deprived of a clearly established constitutional right and that there was a disputed issue of material fact about whether the defendants acted in an objectively reasonable manner. The defendants now appeal. We reverse and remand this case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

On August 20, 1992, Sanchez arrived at Houston's Intercontinental Airport from Mexico at approximately 7:50 p.m. When Sanchez passed through the United States Customs Service, a Customs agent matched his name and general description to a fugitive warrant issued from Cheatham County, Tennessee. Because of the match, Sanchez was detained. Defendant John Chandler was the sheriff of Cheatham County; defendant Floyd Duncan was an investigator in the criminal investigation division of Cheatham County's Sheriff's Department; and Sarah Hunter was a dispatcher with the Cheatham County Sheriff's Department.

That same night, at approximately 8:33 p.m., the Cheatham County Sheriff's Department, through dispatcher Hunter, received a request from Customs at the Intercontinental Airport in Houston for confirmation that a person named "Oscar F. Sanchez" was still wanted. The Cheatham County's Sheriff's Department, acting through either Hunter or investigator Duncan, responded at 8:46 p.m. that a person by the name of "Oscar F. Sanchez" was, in fact, still wanted.

At 8:59 p.m., Duncan received a message from Customs in Houston that proceedings had been initiated to take custody of "Sanchez." At 9:36 p.m., Duncan faxed to Customs in Houston

John P. Chandler. Sanchez also sued unnamed persons employed by the United States of America, unnamed persons employed by the City of Houston, unnamed persons employed by Harris County, Texas, and unnamed persons employed by Cheatham County, Tennessee.

2

identifying information, including photographs, fingerprint copies, and other information, including the fact that the wanted "Sanchez" had a tattoo of a rose on his left shoulder.

A unit from the Houston Police Department (HPD) was dispatched to Customs at approximately 10:29 p.m. Defendant Officer Warren K. Haywood arrived at the airport at approximately 11:24 p.m. Defendant Officer Michael S. Lewellen received a phone call and authorized a "fugitive hold" on Sanchez. Shortly after 12:15 a.m. on August 21, 1992, Officer Haywood transported Sanchez to HPD headquarters.

Later that day, defendant Officer W.H. Bearden along with defendant Sergeant P. Pohl brought Sanchez before a Harris County, Texas probable cause court at which time Sanchez refused to waive extradition proceedings. During the probable cause hearing, Sanchez claimed his innocence and argued that he was not the person named in the Cheatham County fugitive warrant. During that hearing, Officer Bearden noticed that Sanchez did not have the same tattoo on his shoulder that was described in the warrant from Tennessee. At the conclusion of the probable cause hearing, the judge ordered defendant Sheriff Johnny Klevenhagen to hold Sanchez until his (Sanchez's) identification could be confirmed. Officer Bearden then took Sanchez to the Harris County jail. Sanchez was searched and placed in a cell with other offenders.

Pursuant to the judge's request, defendant Officer Barry J. McDermott compared the fingerprints provided by Cheatham County against those of Sanchez. They did not match. Sanchez was released from custody at approximately 9:00 p.m. on August 21, 1992—about twenty-six hours after his initial detention by Customs agents at the airport, two hours and twenty-five minutes after he had been placed in the Harris County jail, and before he was even booked at the jail. Assistant District Attorney Bill Delmore filed a motion to dismiss the fugitive complaint against Sanchez on September 1, 1992.[2]

---

[2]The motion operated as a procedural device to remove the fugitive complaint from the docket of the county criminal court.

Sanchez and his wife brought a § 1983 civil rights suit against a number of public officials, claiming that Sanchez had been deprived of a clearly established constitutional right and that the officials involved in his twenty-six hour "ordeal" acted unreasonably.[3] The defendants moved for summary judgment on the ground that they were entitled to qualified immunity, and a magistrate judge agreed. However, the district court declined to follow this recommendation and denied the defendants' motion. This appeal followed. We have jurisdiction[4] and now reverse.

## DISCUSSION

We begin by noting that ADA Delmore challenges the district court's rejection of the magistrate's recommendation that Delmore be accorded absolute and qualified immunity from suit. Under the test for qualified immunity, Sanchez has failed to prove that he was deprived of a clearly established constitutional right. Because we find that no conduct by the defendants' deprived the plaintiff of a clearly established constitutional right, we need not reach the issue of absolute immunity. Instead, we conclude that it is only necessary to address the qualified immunity claims of the defendants.

## I.     ARE THE DEFENDANTS ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW?

### A.     The Doctrine of Qualified Immunity

The well-established test for qualified immunity requires us to engage in a two-step inquiry. First, we must determine whether a public official's conduct deprived a § 1983 plaintiff of a "clearly established" constitutional or statutory right. See Harlow v. Fitzgerald, 457 U.S. at 818; Salas v. Carpenter, 980 F.2d 299, 304 (5th Cir. 1992). The constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right. See Anderson v. Creighton, 483 U.S. 635, 639 (1987); Feagley v. Waddill, 868 F.2d 1437, 1439 (5th Cir. 1989); Melear v.

---

[3]Mrs. Sanchez only asserted state-law causes of action.

[4]See Mitchell v. Forsyth, 472 U.S. 511 (1985); Cantu v. Rocha, 77 F.3d 795 (5th Cir. 1996). We limit ourselves to the narrow question of whether, under § 1983, the district court erred in declining to extend qualified immunity to these defendants. As such, we express no opinion on the defendants' other claims.

4

<u>Spears</u>, 862 F.2d 1177, 1187 (5th Cir. 1989). The Supreme Court has warned against vague or general assertions of constitutional rights and has required a § 1983 plaintiff to state with specificity the constitutional right that has been allegedly violated—otherwise, liability could be imposed in every case. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. at 639. The federal courts of appeal have taken an especially strict approach to determining whether a constitutional right is cognizable, thus resolving any doubts in the law against § 1983 plaintiffs.[5] We have followed this trend, mindful that "a constitutional violation does not occur every time someone feels that they have been wronged or treated unfairly." <u>Shinn ex rel. Shinn v. College Station Indep. Sch. Dist.</u>, 96 F.3d 783, 786 (5th Cir. 1996), <u>cert. denied</u>, 117 S.Ct. 1695, 137 L.Ed.2d 822 (1997).[6]

Second, a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable.

---

[5]<u>See</u> <u>Kernats v. O'Sullivan</u>, 35 F.3d 1171, 1178 (7th Cir. 1994) ("[W]hen the factual setting is unique in non-trivial aspects, with no clear parallel in other cases, the relevant constitutional factors must point strongly in the direction of constitutional transgressions before immunity is lost."); <u>Spivey v. Elliot</u>, 29 F.3d 1522, 1527 (11th Cir. 1994) ("Where there is so much room for differing interpretations, we cannot say the contours of the right were clearly established."); <u>Chew v. Gates</u>, 27 F.3d 1432, 1449-50 (9th Cir. 1994) (finding that officers implementing a policy that had never been declared unconstitutional by any court are entitled to qualified immunity), <u>cert. denied</u>, 115 S.Ct. 1097 (1995). <u>See generally</u> Kit Kinports, <u>Qualified Immunity in Section 1983 Cases: The Unanswered Questions</u>, 23 GA. L. REV. 597, 605-07 n.41 (1989) (discussing the questions left unanswered by the Court regarding the meaning of "clearly established constitutional right").

[6]<u>See</u> <u>Babb v. Dorman</u>, 33 F.3d 472, 478 (5th Cir. 1994) ("[W]e can confidently state that it is not clearly established that the offense of public intoxication requires, in all instances, a degree of intoxication greater than that for DWI."); <u>Foster v. City of Lake Jackson</u>, 28 F.3d 425, 431 (5th Cir. 1994) (holding that the fact that the alleged right was expanded by the courts after incident does not mean the right was "clearly established" at the time of the conduct in question); <u>Salas v. Carpenter</u>, 980 F.2d at 309-10 (holding that the Fourteenth Amendment imposes no duty on a sheriff's department to train and equip police officers to handle hostage situations); <u>White v. Taylor</u>, 959 F.2d 539, 546 (5th Cir.1992) (holding that a decision issued by the Supreme Court after the defendant officer's trial, which held that the Court's standard regarding probable cause determinations had not provided guidance, was sufficient to show that the plaintiff had not been deprived of a clearly established constitutional right); <u>Hodorowski v. Ray</u>, 844 F.2d 1210, 1217 (5th Cir. 1988) (reversing the district court's decision that "family integrity" is a clearly established constitutional right); <u>cf.</u> <u>Brewer v. Wilkinson</u>, 3 F.3d 816, 825-26 (5th Cir. 1993) (stating that most recent decisions of the Supreme Court indicated that opening of prisoners' incoming mail is not a violation of the prisoner's constitutional rights, but opening outgoing mail is a violation), <u>cert. denied</u>, 114 S.Ct. 1081 (1994); <u>James v. Sadler</u>, 909 F.2d 834, 838 (5th Cir. 1990) ("The right to be free from an unreasonable pat-down search is a constitutional right sufficiently contoured to remove the defendant's actions from the protection of the immunity doctrine.").

5

Mouille v. City of Live Oak, 918 F.2d 548, 551 (5th Cir. 1990); Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990). Whether an official's conduct is objectively reasonable depends upon the circumstances confronting the official as well as "clearly established law" in effect at the time of the official's actions. Anderson v. Creighton, 483 U.S. at 641. The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a "constitutional scholar." Harlow v. Fitzgerald, 457 U.S. at 815-17; Babb v. Dorman, 33 F.3d at 478.[7]

This two-part test sits atop a firm policy foundation. Foremost among these policy considerations is the deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties. See Pierson v. Ray, 386 U.S. 547, 555 (1967); Anderson v. Creighton, 483 U.S. at 638; Harlow v. Fitzgerald, 457 U.S. at 814; Scheuer v. Rhodes, 416 U.S. 232, 239-41 (1974). For example, the Supreme Court has expressed concern that expansive civil liability for actions taken while on duty may cause police officers to hesitate before acting—a situation that could produce unwelcome results. See Malley v. Briggs, 475 U.S. at 341; Briscoe v. LaHue, 460 U.S. 325, 343 (1983). Balanced against these concerns is the right of injured persons to receive redress for a violation of their constitutional rights, with the threat of monetary damages operating to deter public officials from violating citizens' constitutional rights. See Butz v. Economou, 438 U.S. 478, 504-07 (1978).

### B.     Analysis

With these background principles in mind, we now turn to the merits of this appeal. Sanchez alleges that he was wrongfully detained and falsely imprisoned by the defendants when they knew that he was not the person wanted on the fugitive warrant. Notably, Sanchez does not attack the validity

---

[7]Prior to the Supreme Court's decision in Harlow, the Court's determination of whether a public official's actions were reasonable included a subjective component. See Wood v. Strickland, 420 U.S. 308, 321 (1975). In Harlow, however, the Court abandoned the subjective component of the qualified immunity analysis. 457 U.S. at 815-17; see also Stephen J. Shapiro, Public Officials' Qualified Immunity in Section 1983 Actions Under Harlow v. Fitzgerald and its Progeny: A Critical Analysis, 22 U. MICH. J.L. REF. 249, 273-74 (1989); John D. Kirby, Note, Qualified Immunity for Civil Rights Violations: Refining the Standard, 75 CORNELL L. REV. 462, 484-85 (1990).

of the warrant, which he concedes had been issued for "Oscar F. Sanchez" with his date of birth and social security number. Sanchez argues instead that because the defendants were in possession of the actual suspect's photographs, fingerprints, and information that the suspect had a rose tattoo on his left shoulder within two hours after Sanchez's initial detention, the defendants had "conclusive proof" that he was not the person wanted on the outstanding arrest warrant. From this, Sanchez concludes that his constitutional rights were violated because no one compared his fingerprints to those of the suspect until almost twenty-four hours after his initial detention.

We disagree, go no further than step one of the qualified immunity analysis, and conclude that Sanchez has not shown that the defendants deprived him of a clearly established constitutional right.

In Baker v. McCollan, 443 U.S. 137 (1979), the Supreme Court held that the detention of an individual for three days on the basis of a facially valid search warrant did not amount to a deprivation of liberty without due process of law—despite the individual's protestations of innocence. Id. at 143-45; see also Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980).[8] The Court reasoned that officials charged with maintaining custody of the accused named in a warrant are not required by the Constitution to perform an error-free investigation of a claim of innocence. Id. at 145-46. "The Constitution does not guarantee that only the guilty will be arrested," for "[i]f it did," reasoned the Court, "§ 1983 would provide a cause of action for every defendant acquitted—indeed, for every

---

[8]Of course, the Court qualified this statement and suggested that at some point, even though law enforcement officials are proceeding pursuant to a valid warrant in the face of protestations of innocence, detention of that individual would run afoul of the Constitution. 443 U.S. at 144-45. However, the Court held that three days "does not and could not amount to such a deprivation." Id. at 145; Simons v. Clemens, 752 F.2d 1053, 1054-55 (5th Cir. 1985) (plaintiff who alleged that she had been illegally arrested and detained for 14 to 16 hours failed to allege any constitutional deprivation because she had been arrested on a facially valid warrant); compare Douthit, 619 F.2d at 532 (detention of prisoner for 30 days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process). Accordingly, to the extent Sanchez bases his constitutional claim on the amount of time he was detained (approximately twenty-six hours), we reject the argument under the authority of Baker.

suspect released." Id. at 145.[9]  The Court concluded that the three-day detention did not amount to a violation of the plaintiff's constitutional right to due process.  Id.

We find that the facts of this case come within the compass of Baker; in fact, we fail to see any meaningful distinction between Baker and this case.  Federal law enforcement officials and officials from Houston and Chatham County, Tennessee held Sanchez on the basis of a valid arrest warrant.  Those same officials also declined to release Sanchez even though he consistently asserted his innocence.  Under these facts, Baker compels the conclusion that the actions of the defendants in this case did not deprive Sanchez of any clearly established constitutional right.

That law enforcement officials were in possession of information that exculpated Sanchez does not change this result.  Although we have held that illegal detention by way of false imprisonment is a recognized § 1983 tort, Simmons v. McElveen, 846 F.2d 337 (5th Cir. 1988), we have required proof that the official's actions went beyond mere negligence before that tort takes on constitutional dimensions.  Sanders v. English, 950 F.2d 1152, 1159 (5th Cir. 1992) (cases cited therein).  Sanchez has failed to show that failure to act on the exculpatory information went beyond mere negligence.  We need not look any further than Sanchez's own testimony for support for this conclusion.  In his deposition, Sanchez said that there was "considerable debate amongst the officers involved as to whether he [Sanchez] matched the appearance of the suspect wanted in the warrant."  Given this fact, we simply cannot say that the defendants' failure to release Sanchez sooner was anything more than negligent.  See, e.g., Simmons v. McElveen, 846 F.2d at 339 (failure to compare suspect's fingerprints with those on a cigarette package amounted to no more than mere negligence).[10]  A contrary conclusion would produce the anomalous result that the defendants were

---

[9]This conclusion makes perfect sense in light of the important policy underlying qualified immunity, namely, that public officials should not be deterred from discharging their professional obligations out of fear of civil liability.

[10]Both Sanchez and the district court point to the testimony of one defendant which illustrates the view that Sanchez should have been released sooner.  It is ironic that Sanchez chose to name so many defendants and now relies on the testimony of a single defendant for his claim that the defendants deprived him of his constitutional right to due process.  In any event, the mere fact that one of the actors in the events surrounding Sanchez's detention believed that Sanchez was not the person named

8

required to conduct a virtually error-free investigation. In light of clear language to the contrary in Baker, we decline to so hold.

## CONCLUSION

Finding that Sanchez has not shown that he has been deprived of a clearly established constitutional right, we hold that all defendants named in Sanchez's § 1983 suit are entitled to qualified immunity as a matter of law. Accordingly, we REVERSE the district court's conclusion to the contrary and REMAND this case to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

in the warrant does not alter our conclusion that there was an ongoing debate among the officers as to whether Sanchez was the Tennessee fugitive.