**Mike JOHNSON and Angela Johnson, Plaintiffs.**

v.

**CITY OF MERIDIAN, Robert J. Breshahan and Melanie Farina, Defendants.**

**No. CIV.A. 4:98CV26LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

July 23, 1998.

T. Patrick Welch, McComb, MS, for Plaintiffs.

William C. Hammack, Bourdeaux & Jones, Meridian, MS, for City of Meridian.

Charles L. Bearman, John B. Clark, Daniel, Coker, Horton & Bell, Jackson, MS, Marc D. Amos, Dewit T. Hicks, Jr., Gholson, Hicks & Nichols, Columbus, MS, for Robert J. Bresnahan.

John G. Compton, Joseph A. Davis, Witherspoon & Compton, Meridian, MS, for Melanie Farina.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendant Robert J. Bresnahan to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs Mike and Angela Johnson oppose the motion, and the court, having considered the parties' memoranda, concludes that the motion should be denied, in part, and granted in part.

Plaintiffs filed suit under 42 U.S.C. § 1983, alleging that defendants violated Mike Johnson's Fourth and Fourteenth Amendment rights to be free from illegal seizure and unlawful arrest. Bresnahan, who, at the time alleged in the complaint, represented co-defendant Melanie Farina (Farina) in a divorce proceeding and served as an assistant City of Meridian prosecutor, maintains that dismissal is required because as a state prosecutor, acting within the scope of his duties, he is entitled to either absolute, quasi-judicial immunity or to qualified immunity. Plaintiffs contend that pursuant to the facts as alleged in the complaint, Bresnahan is entitled to neither. The court agrees.

The facts as alleged in the complaint, which for the purposes of a Rule 12(b)(6) motion are taken as true, are as follows. See Doe v. Louisiana, 2 F.3d 1412, 1413 (5th Cir.1993). Prior to March 17, 1997, Dr. Joseph Farina, who was at the time involved in a divorce proceeding with defendant Farina, (a cosmetologist/nail technician who works out of her home in Meridian, Mississippi) hired Mike Johnson (Johnson), a private investigator, to observe her residence "for the sole purpose of video taping Farina's customers coming and going through Farina's residence's front door attempting to obtain evidence that Farina had misrepresented her income." Johnson was to video tape the home from a public place during normal business hours for a period of days. Early in the morning on March 17, 1997, after parking his Ford Explorer on the street at a point where Farina's front door could be viewed from the vehicle, Johnson started the recorder and then left the area in a truck driven by Angela. According to the complaint, the two, who returned every two hours to change the video tape, never entered the real property on which Farina's home is located.

When the Johnsons returned at 7:30 p.m. to conclude taping for the day, they observed a Meridian police officer and two men dressed in civilian clothes, one of whom was Bresnahan, standing behind the officer's patrol car, near their parked Explorer. The two pulled up beside the officer and asked if anything was wrong. The officer said "no" and requested that they move along. Johnson informed the officer that he had come to retrieve his vehicle to which the officer responded, "This is your vehicle?" When Johnson answered yes, the officer stated that he was about to have it towed because it was parked too close to the intersection. According to the complaint, after Johnson asked if the officer would write a ticket instead of towing the vehicle, he said, "Well, I won't write you a ticket this time, I'll let you go with a warning; just take it and go." As Johnson parked the truck, Bresnahan instructed the officer to get some identification from Johnson; but before this could be ac-

complished, Bresnahan further told the officer, "Take him downtown, we're pressing charges."

At Bresnahan's direction, the officer took Johnson into custody and transported him to the police department where he was interrogated by Bresnahan. Sometime after Johnson's arrival at the police department, Farina arrived and, with Bresnahan's assistance, executed an affidavit accusing Johnson of stalking her in violation of state law. Plaintiffs contend that they did this in an effort to avoid civil liability for Johnson's illegal arrest.[1] When Johnson subsequently appeared for trial on the stalking charge in Meridian City Court, Alfred Corey, the city prosecutor, dismissed the charge against him.

Johnson avers that as a result of the acts of each defendant, and those acts which each committed in concert with the other, he has suffered not only great emotional trauma, discomfort and embarrassment, but also damage to his personal and professional reputation. Additionally, Angela alleges that she was "a witness to the entirety of the violation of her husband's constitutional rights and suffered therefrom great emotional distress, monetary loss, in essence, the deprivation of her liberty, and the ability to fully function as a member of her family and community."

In the motion before the court, Bresnahan asserts that he is entitled to absolute immunity from suit because plaintiffs' allegations, at most, amount to only an averment that he, in his official capacity as an assistant city prosecutor, "initiated the criminal process by having Johnson brought to the police station to be charged with the crime of stalking."

1. Johnson was charged under Miss.Code Ann. § 97–3–107, which provides in pertinent part as follows:

(1) Any person who willfully, maliciously and repeatedly follows or harasses another person, or who makes a credible threat, with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one (1) year or by a fine of not more than One Thousand Dollars ($1,000.00), or by both such fine and imprisonment.

. . . . . . . . . . .

Bresnahan submits that such conduct on his part is " 'intimately associated with the judicial phase of the criminal process' " such that he is shielded from suit. *Buckley v. Fitzsimmons*, 509 U.S. 259, 270, 113 S.Ct. 2606, 2614, 125 L.Ed.2d 209 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). Johnson, however, takes the position that because Bresnahan's role in his arrest was that of either an advisor to the police or an investigator and was not that of an advocate preparing for trial, Bresnahan is not entitled to absolute immunity. The court agrees.

Because qualified immunity is generally "sufficient to 'protect officials who are required to exercise their discretion,' " *id.* at 269, 113 S.Ct. at 2613 (quoting *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)), an "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question," *id.* To determine whether a defendant has met this burden, the court looks to the nature of the function performed and not to the actor who performed it, focusing on whether the conduct in question is "intimately associated with the judicial phase of the criminal process." *Id.* at 269–70, 113 S.Ct. at 2614. "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* at 273, 113 S.Ct. at 2615 (citing *Burns v. Reed*, 500 U.S. 478, 494–96, 111 S.Ct. 1934, 1943–44, 114 L.Ed.2d 547 (1991)).

(4) For the purposes of this section, "harasses" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person. "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct."

In *Burns*, the plaintiff sought to hold the defendant, a state prosecutor, liable under § 1983 for his having advised the police that plaintiff's confession under hypnosis constituted probable cause to arrest the plaintiff for the attempted murder of her children. *Burns*, 500 U.S. at 482, 111 S.Ct. at 1937. Rejecting the defendant's argument that advising the police is an activity which is intimately associated with the judicial process so as to warrant the extension of absolute immunity, the Court observed that it would be "incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id.* at 495, 111 S.Ct. at 1944.

The plaintiff in *Buckley v. Fitzsimmons*, 509 U.S. 259, 270, 113 S.Ct. 2606, 2614, 125 L.Ed.2d 209 (1993), alleged that the defendants, state prosecutors who had participated in the early stages of the sheriff's department's investigation, entered into a preindictment-conspiracy with sheriff's deputies to create false evidence linking a boot owned by the plaintiff with a bootprint left at the scene of the murder of an eleven-year old child.[2] *Buckley*, 509 U.S. at 262, 272, 113 S.Ct. at 2610, 2615. In response to the defendants' claim that they had absolute immunity, the Court determined that the defendants had failed to carry their burden of "establishing that they were functioning as 'advocates' when they were endeavoring to determine whether the bootprint at the scene of the crime had been made by [the plaintiff's] foot." In reaching this conclusion, the Court recognized that although "'the duties of a prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,'" *id.* at 272, 113 S.Ct. at 2615 (quoting *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995, n. 33) "there is a difference between an advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Id.*

■ In the instant case, the court likewise concludes that Bresnahan has failed in his burden of showing that absolute immunity is justified for the conduct in question. The court rejects Bresnahan's assertion that by directing the officer to take Johnson into custody, he was merely informing the officer of his decision to initiate criminal proceedings against plaintiff, for such a characterization of his conduct is not consistent with plaintiff's allegation that immediately prior to Bresnahan's directive to the officer, the officer had issued only a warning to Bresnahan regarding a traffic violation. In the court's view, given plaintiffs' allegations, it is certainly reasonable to infer that the officer, prior to being advised by Bresnahan to arrest Johnson, had no intention of arresting Johnson for any crime and evidently did not consider that he had probable cause to do so. Thus, it is reasonable to conclude that by instructing that plaintiff should be arrested, Bresnahan was effectively advising the officer that probable cause for the arrest existed, a situation akin to that in *Burns*. And just as in *Burns*, Bresnahan, in so advising the officer, was not performing a function that was intimately associated with the judicial process. For that reason, he is not entitled to absolute immunity.

Moreover, the allegations of plaintiffs' complaint further indicate that Bresnahan's conduct was also investigatory in nature. According to the complaint, at the time the Johnsons returned to the Explorer, all the police officer (and presumably Bresnahan), knew was that a vehicle was parked too close to the intersection. There is no allegation in the complaint that Bresnahan's directive that Johnson be arrested specified the crime for which he was being arrested. The complaint does aver, however, that Johnson was interrogated by Bresnahan and that Farina made the affidavit only after Johnson had been at the police station for some period of time. Thus, plaintiffs are entitled to an inference that Bresnahan's interrogation of plaintiff was the action of a detective searching for clues as opposed to that of an advocate pre-

---

**2.** Buckley also alleged that one of the defendants made false statements about him in a press con-

ference following his arrest for the child's murder. *Buckley*, 509 U.S. at 262, 113 S.Ct. at 2610.

paring for trial. *See Buckley,* 509 U.S. at 272, 113 S.Ct. at 2615.

 As an alternative to his argument that he is entitled to absolute immunity from suit, Bresnahan maintains that he is also shielded from suit by qualified immunity. However, in the court's opinion, Bresnahan's claimed entitlement to qualified immunity fails for a similar reason. Having concluded that Bresnahan's statement that Johnson should be taken downtown is reasonably viewed as an advisement to the officer that probable cause for arrest existed,[3] the court turns to defendant's argument that because probable cause existed to arrest Johnson, his actions in so advising the officer were objectively reasonable.[4] *See Sanchez v. Swyden,* 131 F.3d 1144, 1147–49 (5th Cir.1998). It is well established that "[i]n suits alleging illegal arrest, the qualified immunity determination turns on whether a reasonable officer [or prosecutor] could have believed the arrest to be lawful, in light of clearly established law and the information that the officer [or prosecutor] possessed" at the time of the arrest. *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir. 1994) (internal quotations and alterations omitted). *See Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) ("Probable cause existed if at the moment that the arrest was made the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the defendant] had [committed a crime].") (internal quotations and alterations omitted). Here, as previously observed, according to the factual allegations in the complaint (with which Bresnahan has not taken issue), the extent of the information possessed by Bresnahan and the officer at the time of Johnson's arrest was that a vehicle, owned by plaintiff and parked on the street where Farina resided, was too close to the intersection. In light of this, the court concludes that a reasonable officer, or as in this case, prosecutor, would not have believed that probable cause existed to arrest Johnson for stalking Farina.

The court, however, agrees with Bresnahan that Johnson has failed to state a claim against him in his private capacity as Farina's attorney. In order to state a claim under § 1983 against a private defendant, the plaintiff must allege that the individual conspired with a state actor to violate the plaintiff's constitutional rights. *See Brummett v. Camble,* 946 F.2d 1178, 1185 (5th Cir.1991). In the case at bar, the basis of plaintiff's claim against Bresnahan in his private capacity seems to be that Bresnahan, acting as Farina's attorney, conspired with Bresnahan, acting as assistant city prosecutor. As a conspiracy, by definition, requires an agreement between two or more persons, *see United States v. Thomas,* 12 F.3d 1350 (5th Cir.1994), it seems an impossibility, and plaintiff has provided no authority to the contrary, that Bresnahan could conspire with himself to deprive plaintiff of his constitutional rights. Accordingly, defendant's motion to dismiss will be granted in this regard.

Based on the foregoing, it is ordered that defendant's motion, insofar as it seeks to dismiss the claims against him in his capacity as assistant city prosecutor, is denied. It is further ordered that the claim against Bresnahan in his private capacity is dismissed.

---

3. The court notes that this motion does not require the court to determine the propriety of the officer's having relied on Bresnahan's advice.

4. Defendant is, of course, correct that in resolving the issue of qualified immunity, the court's analysis is guided by federal law and not state law as urged by plaintiffs.