IRVING, J.,
DISSENTING:
¶ 42. I cannot agree with the majority that Gary Stewart’s due process rights were not violated. Therefore, I respectfully dissent.
¶ 43. In 1998, Stewart, who is black and lives in Louisiana, was indicted on ten counts of false pretense stemming from a check writing spree in which a white male using Stewart’s identity passed several worthless cheeks in and around Laurel, Mississippi. At the time of the indictment, the district attorney’s office had a picture of the white male posing as Gary Stewart. This picture was in the files of the district attorney’s office when Stewart was arrested in New Orleans, Louisiana on February 24, 2000, pursuant to a capias issued by the Circuit Court of Jones County on February 27, 1998, and on March 31, 1998.
¶ 44. When Stewart was arrested on February 24 2000, the Louisiana authorities advised the Mississippi authorities that the Gary Stewart whom the Louisiana authorities had arrested did not have the same birth date as the Gary Stewart who was the subject of the arrest warrant. Melvin Riley, the chief investigator for the district attorney’s office, was one of the Mississippi authorities who was advised of this fact. According to Riley, upon learning of this discrepancy, he checked the files on Gary Stewart which were being maintained in the district attorney’s office, yet he did not discover that the Gary Stewart that they were looking for was white and not black.
¶ 45. It is beyond my comprehension how the majority can conclude on these facts that the failure on the part of the district attorney’s office to discover the picture in its file may indicate only a slight degree of negligence and that the actions of the district attorney’s office were objectively reasonable. It seems quite obvious to me that the district attorney’s office was not only guilty of negligence but was guilty of gross negligence and a reckless indifference to Stewart’s right not to be deprived of his liberty without proper due process.
¶ 46. It is also significant that even though the district attorney’s office was placed on notice immediately upon Stewart’s arrest that it may have nabbed the wrong man, it was also content to allow the charges to linger against Stewart for a least five days after the district attorney’s office had finally located in its office the picture of the white male. Its explanation was that since Stewart had a hearing coming up five days later, it just decided to wait until then. The majority glosses over this fact as unimportant in the overall scheme of things. I guess in the view of the majority it was okay to force Stewart to make another trip from New Orleans to Laurel, Mississippi to get done what the district attorney’s office could have and should have done without any further action on Stewart’s part.
¶ 47. Illegal detention by way of false arrest and imprisonment is a tort of constitutional dimensions if the circumstances indicate that the failure to act on exculpatory information is more than simple negligence. Sanchez v. Swyden, 139 F.3d 464, 469 (5th Cir.1998).
¶ 48. The majority suggests that, at best, there was only slight negligence on the part of the district attorney’s office because the picture was obtained during a previous administration, and a new admin*1030istration was in place when Stewart was arrested. Such explanation is not enough. When Stewart was first arrested in Louisiana on February 24, 2000, he protested that he was not the one who had committed the offenses. Similarly, when he was transported from Louisiana to Laurel Mississippi, he protested that he was not the one who had committed the charged crimes. In fact, Stewart stated that he had never been to Mississippi.
¶ 49. As already mentioned, the very night that Stewart was arrested the chief investigator for the district attorney’s office was told that the birth date of the arrested Stewart did not match the birth date of the Stewart who was the subject of the indictment. This discrepancy was certainly enough to prompt a thorough investigation by the district attorney’s office and the sheriffs office to determine if they had the right man. That did not happen until a month later and not until after Stewart had bonded out of jail and presented proof via his employment records that he was at work in New Orleans when the checks were written in Laurel, Mississippi.1
¶ 50. Again, the majority apparently dismisses as insignificant the fact that the birth date of the arrested Stewart and the birth date of the Stewart in the indictment were different. In apparently concluding that the discrepancy regarding the birth dates was insignificant, the majority favorably quotes the chief investigator for the district attorney’s office: “But that’s not uncommon for us. I can go through the jail roster and pick up the same guy in there with dozens of dates of birth.” While the birth date discrepancy normally may not have been uncommon, in this case, it was extraordinarily significant. The significance of the birth date discrepancy lies in the fact that the information supplied to the Louisiana authorities to make the arrest was supplied by the district attorney’s office, and the Louisiana authorities acted on that information in making the arrest. When the Louisiana authorities made the arrest, they determined that the arrested Stewart’s birth date did not match the birth date of the Stewart in the information supplied by the district attorney’s office. In this instance, and under these circumstances, how can it legitimately be argued that the failure of the district attorney’s office to timely investigate the birth date discrepancy did not amount to gross negligence and that its actions were “objectively reasonable.”
¶ 51. The explanation given by witness Riley, and embraced by the majority, to support the notion that the actions of the district attorney’s office were reasonable, even in light of the office’s failure to timely investigate the birth date discrepancy, makes no logical sense. The source of the Louisiana authorities’ information was not a jail roster, which often contains the unverified birth dates of arrestees, but credible information supplied by the district attorney’s office. It is important to observe that this information had to come from the files being maintained in the district attorney’s office. Where else would the district attorney have gotten the birth date of the perpetrator except from the copy of the identification card given to the district attorney’s office by one of the merchants who took one of the worthless checks from the individual posing as Gary Stewart and obtained a copy of his identification card, along with a clear picture of the individual.
¶ 52. The majority, in attempting to assuage the potential legal consequences flowing from the failure of the district attorney’s office to timely investigate fur*1031ther upon being advised of the birth date discrepancy, states that the chief investigator for the district attorney’s office, Melvin Riley, never had an opportunity to see the incarcerated Stewart and thus learn Stewart’s racial identity. The majority explains that Riley chose not to attempt to talk to Stewart because Riley knew that Stewart “was gonna [sic] hire his own attorney.” The fallacy of this explanation is readily apparent. You do not have to talk to a black person to learn his racial identity. Observing the individual is usually enough. Moreover, the affidavit of the arresting officer in Louisiana — which was filed with the circuit clerk of Jones County on March 8, 2000 — identified the arrested person as “one Gary Stewart, B/M, DOB/6-12-1967, 6-1, 250 lbs., black hair, brown eyes, SOC/ 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, Louisiana driver’s license # 005310151.” It does not take one well versed in police jargon to know that the designation “B/M” refers to a black male. Although Riley was not asked during his deposition whether he ever inspected the arresting documents which were forwarded from Louisiana, it seems logical to me that someone in the district attorney’s office would have. This seems especially true in light of the fact that the Louisiana authorities had informed the district attorney’s office that the birth date of the Gary Stewart on the supplied documents did not match the birth date of the Gary Stewart that they arrested.
¶ 53. I should also comment on the majority’s attempt to place all of the responsibility on Stewart for his being detained for more than three weeks while the district attorney’s office had information and access to information that clearly proved that Stewart was not the wanted individual. The majority believes that Stewart should have protested loudly at his arraignment that he was not the Gary Stewart who was being sought by the Jones County authorities. Well, I do not know how Stewart could have been more eloquent or clear than he was when, at his arraignment, he answered “not guilty” when the court asked him how did he plead to the charges. After all, he had protested, to no avail, to the arresting authorities in Louisiana and to the Jones County sheriff deputy that he did not commit the acts and had never been in Mississippi. What else could be reasonably required of Stewart, a law abiding citizen, who had no familiarity with the criminal justice system. Are some citizens required to prove their innocence, or is the state required to prove the guilt of all citizens? The majority improperly focuses on Stewart’s inactions when the focus should be on the inactions of the district attorney’s office which was callously indifferent to the rights of this black individual.
¶ 54. It appears to me that there is certainly a material issue of fact as to whether the actions of the district attorney’s office constitute simple negligence or gross negligence. Thus, the final question is whether the district attorney and his assistants are immune from liability under the Mississippi Tort Claims Act notwithstanding their possible gross negligence in this case.
¶ 55. The majority agrees with the circuit court that immunity is appropriate. The circuit court found that Stewart’s claims are “barred by the doctrine of governmental immunity, judicial immunity and/or sovereign immunity and [that the district attorney] is exempt from liability under the provisions of Miss.Code Ann. § 11 — 46—9(l)(a)(b)(e)(d) and (f).”
¶ 56. The referenced code section and subsections state:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
*1032(a) Arising out of a- legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;
(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, or ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
* * *
(f) Which is limited or barred by the provisions of any other law;
¶ 57. It is readily apparent that subsection (a) is inapplicable. The arrest of Stewart, based on inaccurate data, does not arise out of a legislative or judicial action or an administrative action or inaction of a legislative or judicial nature. While there was a warrant issued for a Gary Stewart, it was a warrant for a Gary Stewart with a birth date of May 3, 1959, not for a Gary Stewart with a birth date of June 12, 1967.2 More importantly, even conceding arguendo that the arrest may have arisen out of a judicial action, it was not the initial arrest but the illegal continued detention of Stewart that gave rise to this cause of action. Had the district attorney adequately investigated the matter of the mistaken identity when he was told that the birth dates did not match, Stewart would have been left without a cause of action. A reasonable period of detention is permitted by the law to allow law enforcement authorities time to establish the identity of the person arrested.
¶ 58. It also seems to me that subsections (c) and (d) are inapplicable. First, the district attorney is not a policeman or fireman, and his duties do not relate to or involve police or fire protection. Clearly, subsection (c) is applicable to policemen and firemen, not to district attorneys. But even if it could be legitimately argued that an employee of the district attorney’s office, in passing information to the sheriffs department regarding an indictment for the purpose of effecting the arrest of the person indicted, is engaged in the performance or execution of duties or activities relating to police or fire protection, immunity under subsection (c) is not appropriate if the employee acted in reckless disregard of Stewart’s safety and well-being. In my opinion, a genuine issue of material fact exists as to how the actions of the district attorney may properly be classified.
¶ 59. Subsection (d) is clearly not applicable because the act of passing on information to the sheriffs department concerning an indicted person in order to have the person arrested, is an act ministerial in nature and is not an act involving the exercise or performance of a discretionary function. While the decision to indict or *1033not indict Stewart was the exercise of a discretionary function, once he was indicted, the actions taken to have him arrested were ministerial.
¶ 60. As to subsection (f), the circuit court did not cite or identify any other law that would bar Stewart’s claim. I can think of none. Therefore, I think subsection (f) is also inapplicable.
¶ 61. Having eliminated all of the subsections relied upon by the circuit court except subsection (b), I turn to this subsection. It seems to me that subsection (b) is the most appropriate provision of the Mississippi Tort Claims Act which may have applicability to our facts. As previously noted, this subsection provides that a government entity and employee are not liable for any claim arising out of any act or omission of an employee of a governmental entity if the employee exercises ordinary care while relying upon, executing, or performing or failing to execute or perform, a statute, ordinance, or regulation, whether or not the statute, ordinance or regulation be valid.
¶ 62. Assisting the sheriff department in effecting the arrest of indicted individuals by providing pertinent information about the indicted person is certainly, in my judgment, a part of performing the statutory duties of a district attorney. However, as the statute plainly states, immunity is available only if the employee uses ordinary care in executing the duties of the office.
¶63. In this case, reasonable persons can differ on the question of whether the district attorney’s office, considering the totality of the facts here, employed ordinary care in its actions which led to the arrest and detention of Stewart. Given the standard of review which we must employ in summary judgment cases, I believe the circuit court erred in granting summary judgment. I would reverse and remand for a trial on the merits.
BRIDGES, P.J., AND ISHEE, J., JOIN THIS SEPARATE WRITTEN OPINION.

. Initially, Stewart was denied bond. However, several days later, he was granted bond.

. The person posing as Gary Stewart with the birth date of May 3, 1959 is white and is the person who committed the crimes. The Appellant, who is black, birth date is June 12, 1967.