United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2008

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 07-40794
Summary Calendar

MARY HANCOCK

Plaintiff-Appellee

V.

MIKE A BAKER, Chief of Police of Bay City Texas

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:06-CV-632

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Mike Baker appeals the district court's denial of his motion for summary judgment. We affirm.

I. FACTS AND PROCEEDINGS

During January 2006, Baker, then the chief of police for Bay City, Texas, was informed that Mary Hancock, a sergeant detective on his police force, had testified in a sexual assault case. Her testimony was in conflict with another

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

officer's testimony and the Matagorda County District Attorney's Office requested that Baker investigate the conflicting testimony, using terms consistent with Texas's perjury statute. Baker initiated an administrative investigation and advised Hancock that self-incriminating information would not be used against her in a criminal proceeding. After questioning Hancock and the other officer involved, Baker requested the Texas Department of Public Safety ("DPS") to conduct a polygraph examination of the two officers. Baker advised DPS that "[t]his is being handled as an administrative matter, not a criminal case."

On March 2, 2006, DPS Sergeant Fincher met with Hancock at the Houston DPS office to conduct the polygraph exam. As was his standard practice, Fincher read Hancock her Miranda rights before the examination and advised her that "as a matter of procedure" she would need to complete a consent form, waiving her Miranda rights. He told Hancock the results of the exam would be given to Baker. He also informed Hancock that he could give the results to the district attorney's office, if it requested them. Fincher advised her that the Miranda warnings and consent form were only a matter of procedure.

Hancock refused to waive her rights. Fincher refused to conduct the exam. Baker subsequently fired Hancock for refusing to take the polygraph exam. The other officer under investigation took the polygraph, and resigned after Fincher detected deception.

After administrative appeals upheld Baker's decision, Hancock filed suit under 42 U.S.C. § 1983 and Texas Government Code § 614.063 regarding the administration of polygraph examinations. Baker moved for summary judgment that he was entitled to qualified immunity on the § 1983 claim. He moved for summary judgment on the state law claim, arguing that there was no private cause of action, and, even if there were, he was immune from it. The district court denied his motion. Baker appealed.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 259 (5th Cir. 2003). A motion for summary judgment should be granted only when there is no genuine issue of material fact. Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003). In determining whether there is a genuine issue of material fact, we view all facts and draw all inferences in favor of the non-moving party. Id.

## III. DISCUSSION

### A.   Qualified Immunity

"The well-established test for qualified immunity requires [this Court] to engage in a two-step inquiry. First, [this Court] must determine whether a public official's conduct deprived a § 1983 plaintiff of a 'clearly established' constitutional or statutory right." Sanchez v. Swyden, 139 F.3d 464, 466 (5th Cir. 1998) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"Second, a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable." Sanchez, 139 F.3d at 467. "Whether an official's conduct is objectively reasonable depends upon the circumstances confronting the official as well as 'clearly established law' in effect at the time of the official's actions." Id. (citing Anderson, 483 U.S. at 641). "The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a 'constitutional scholar.'" Id. (citing Harlow, 457 U.S. at 815–17).

The Supreme Court has held that the dismissal of police officer who refused to waive his Fifth Amendment privilege against self-incrimination violated the officer's constitutional rights. Gardner v. Broderick, 392 U.S. 273, 278–79 (1968).  In that case, the city "discharged [the officer] for refusal to execute a document purporting to waive his constitutional rights and to permit prosecution of himself on the basis of his compelled testimony." Id. at 279.  The Court noted that it did not need to speculate as to whether the waiver would have been effective, because "the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment." Id. at 279.

The first question is whether Baker violated a clearly established constitutional right when he fired Hancock.  Viewing the facts in a light most favorable to Hancock, we hold that he did.  Since 1968, it has been clearly established by the Supreme Court that a public employee may not be fired for refusing to waive the privilege against self-incrimination. Gardner, 392 U.S. at 278–79.  Even if such a waiver were held to be ineffective, that "does not change the fact that the State attempted to force [an employee], upon penalty of loss of employment, to relinquish a right guaranteed [to her] by the Constitution." Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of New York, 392 U.S. 280, 284 n.5 (1968).

Baker correctly argues that he had advised Hancock that the investigation was administrative and would not be used against her in criminal proceedings.  However, Fincher subsequently required that Hancock waive her privilege against self-incrimination as a precondition to conducting the polygraph that Baker had ordered.  Baker admitted that he had no authority over Fincher.  Thus, he could not guarantee that Hancock's answers to Fincher's questions would not be used against her in a criminal investigation.  Furthermore, the

district attorney's office—which did not conduct administrative investigations of the police department—was interested in the result of the investigation. Fincher advised Hancock that he would provide the results of the polygraph exam to that office if asked. Regardless of his characterization of the investigation, Baker's dismissal of Hancock for refusing to take a polygraph that required her to waive her Fifth Amendment rights was a violation of clearly established law.

Baker argues that Hancock failed to invoke her Fifth Amendment rights. However, she did not need to invoke her rights. Firing Hancock for refusing to waive her rights was a constitutional violation regardless of whether she invoked them.

Baker argues that he is immune because he had no authority to fire Hancock and that the city council was the ultimate decisionmaker in Hancock's dismissal. As a factual matter, Baker made the decision to dismiss Hancock, thus, violating her constitutional rights. In his own affidavit, Baker admitted that he "advised [Hancock] that I was terminating her position with the Police Department because of her refusal to submit to a polygraph exam as ordered." As the department administrator or designee, Baker signed Hancock's report of separation to the Texas Commission of Law Enforcement. As a matter of law, Baker cites no legal authority for his proposition that an official is absolved of violating a person's constitutional rights because a supervisory body had the power to overturn the violator's decision. "As a prerequisite, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." Roberts v. City of Shreveport, 397 F.3d 287, 291–92 (5th Cir. 2005) (internal quotations omitted). Hancock has carried her burden of establishing that Baker was personally involved in violating her constitutional rights.

The second question is whether Baker's decision was reasonable. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818–19 (1982). "Where an official could be expected to know that certain conduct would violate . . . constitutional rights, he should be made to hesitate . . . ." Id. at 819. Baker was advised that Hancock refused to take the polygraph after being required to complete a consent form and being read her Miranda rights. Baker agreed that a Miranda warning and waiver of Fifth Amendment rights had no place in a purely administrative investigation. Baker testified that he did not order a second polygraph, without a waiver of rights, because Hancock had been told it was an administrative investigation and he had asked DPS for the polygraph as part of an administrative investigation.

Considering the clearly established law, a reasonable official should not have fired an employee under those circumstances. A reasonable official would have understood that a waiver of rights required by an officer from a different agency could have voided his promise that the investigation was administrative. The Supreme Court has clearly established that regardless of the ultimate effectiveness of the waiver, the coercion to waive the right violates the Fifth Amendment. Uniformed Sanitation, 392 U.S. at 284 n.5. The fact that Fincher's requirement that Hancock waive her rights was a "matter of procedure" does not make Baker's actions reasonable. That Fincher was blindly following a blanket procedure does not excuse Baker's violation of a clearly established constitutional right.

B. State Law Claim

Under Texas law, the head of a law enforcement organization may not discharge a peace officer for refusing to submit to a polygraph examination unless the requirements of Texas Government Code § 614.063 have been

followed.  Before dismissing an officer for refusing to take a polygraph, the head of an agency must provide the officer under investigation "with a written explanation of the nature of the extraordinary circumstances [necessitating a polygraph] and how the integrity of a peace officer or the law enforcement organization is in question." TEX. GOV'T CODE ANN. § 614.063(e). Baker claims that the statute provides no private cause of action and that he is immune from suit.  Hancock concedes that she seeks a declaratory judgment under state law only.  Texas law provides that persons "affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a).

Baker claims that official immunity protects him from liability for failure to follow the requirements of Texas Government Code § 614.063.  Under Texas law, "[o]fficial immunity is an affirmative defense.  Thus, the burden is on the defendant to establish all elements of the defense." City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994) (internal citations omitted).  To be entitled to official immunity, government employees must show the suit arises "from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." Id.  Officials are not entitled to immunity for ministerial acts which are those where "the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." Id. at 654 (internal quotations omitted).  Baker wrongly implies that it is Hancock's burden to overcome a presumed official immunity.  Viewing the facts in a light most favorable to Hancock, we hold that Baker has failed to carry his burden of proving that he is entitled to official immunity.  He has failed to prove that Texas's specific statutory preconditions for the dismissal of peace officers for

refusing to take a polygraph were discretionary acts and that his actions were in good faith, entitling him to official immunity.

## IV. CONCLUSION

The opinion and order of the district court denying summary judgment is AFFIRMED.