United States Court of Appeals,

Fifth Circuit.

No. 93-2202.

Peggy L. BURNS-TOOLE, D.D.S., Plaintiff-Appellant,

v.

Roger P. BYRNE, D.D.S. and Ronald H. Shamblin, D.D.S., Defendants-Appellees.

Jan. 19, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

In this case we address allegations by an applicant for a dental license that she suffered religious discrimination in the course of the testing process. Because we can find no evidence upon which such allegations might properly be based, we affirm the district court's dismissal of her claims and grant of summary judgment.

I.

The plaintiff/appellant, Dr. Peggy Burns-Toole, is an African-American, Seventh-Day Adventist. She is a graduate of the School of Dentistry at Meharry Medical College in Tennessee and has been licensed to practice dentistry in Illinois since 1986. At the time of the incidents at issue, the defendants/appellees, Dr. Roger Byrne and Dr. Ronald Shamblin were appointed members of the Texas State Board of Dental Examiners ("T.S.B.D.E.").

Dr. Burns-Toole moved from Illinois to Texas and applied to take the August 1990 state dental examination. The test was to be given on Thursday, August 23 through Saturday, August 25, 1990. Burns-Toole filed a written request for an examination variance because any work by her on the evening of the 24th and the day of the 25th conflicted with the tenets of her religion. The board granted her request. She took the remaining portions of the examination on Wednesday, August 22, 1990.

Dr. Shamblin graded a portion of her examination taken on one of the regularly scheduled

days. He knew her only as "Applicant # 7" and had no access to information on her religious background.

During the examination, Dr. Burns-Toole's equipment malfunctioned. Although she lost time, she was given additional time at the end of the test as compensation. Whether the equipment malfunction affected her or not, Dr. Shamblin concluded that Dr. Burns-Toole's performance on the "gold onlay casting section" of the examination was inadequate. He conferred with two other examiners who concurred with his assessment. The three examiners decided that she had failed the test.[1]

During the evening of the second day of the examination, Dr. Burns-Toole met with Dr. Zeb Poindexter, a member of a statewide professional association of African-American dentists. The T.S.B.D.E. had granted Dr. Poindexter permission to monitor the progress of African-American applicants and the conduct of T.S.B.D.E. members in the light of the high failure rates of African-American examinees.

Dr. Burns-Toole alleges that Dr. Poindexter admonished her about seeking the variance out of concern that it would call attention to her. Worse, Dr. Poindexter allegedly relayed to her that Dr. Shamblin, one of the examiners who failed her, had stated: "Who did she think she is," with regard to her request for a special accommodation. Dr. Burns-Toole also contends that Dr. Shamblin said to her directly, "You're going to be here next year," an apparent reference to her impending failure which would require her to re-take the test.

Dr. Burns-Toole applied to take the examination again on May 28-30, 1992. This time she sought no variance or special accommodation. A panel of three examiners found her radiograph deficient and, again, she failed.[2] Defendant Byrne, in his capacity as President of T.S.B.D.E., notified Dr. Burns-Toole of her failure. Dr. Byrne had no other interaction with Burns-Toole regarding the issues presented today. Moreover, he was, at all times, unaware of her religious beliefs.

---

[1]It takes three examiners to agree on an applicant's failure.

[2]An applicant must formulate a diagnosis and treatment plan for a patient based upon a set of x-rays. The radiograph is the result.

Had Dr. Burns-Toole taken the examination and failed a third time, she would have been barred from ever taking the test again in Texas. Instead, she brought suit against Drs. Byrne and Shamblin, in their individual and official capacities, under 42 U.S.C. §§ 1983, 1985, and 1986 for religious discrimination and for conspiracy to deprive her of her right to practice her religion freely. She also brought claims under the First and Fourteenth Amendments. The defendants filed a Motion to Dismiss or for Summary Judgment.

The district court granted the defendants' motion and entered a final judgment. With respect to her § 1983 claim, the district court held that Dr. Burns-Toole had failed to present any factual allegations sufficient to overcome the defendants' qualified immunity.[3] The district court dismissed her § 1985 claim on the grounds that § 1985 applies only to allegations of racial animus. Because a § 1985 claim is a prerequisite for a valid § 1986 claim, the judge dismissed the latter as well. Last, he dismissed Dr. Burns-Toole's request to maintain supplemental jurisdiction over her pendent state law claims even though the federal claims were dismissed. The district court then denied her motion to reconsider the order granting summary judgment. This appeal followed.

After consideration of the plaintiff's arguments, we conclude that the district court properly dismissed her claims and granted the defendants summary judgment. We need not reach a number of the legal points to which she ascribes error because the facts upon which she bases her claims are so wanting as to leave little doubt that the district court was correct.

## II.

We review the district court's dismissal of the plaintiff's claims and grant of summary judgment de novo.[4] As to summary judgment, the appellate court applies the same Fed.R.Civ.P. 56(c) test applied by the district court, without reference to the district court's ultimate conclusion.[5]

---

[3]The district judge properly dismissed her First and Fourteenth Amendment claims as well, citing the rule that the proper vehicle for these allegations is § 1983. *Hearth, Inc. v. Texas Department of Public Welfare,* 617 F.2d 381, 382-83 (5th Cir.1980).

[4]*Estate of Carter through Taggert v. U.S.,* 921 F.2d 63, 65 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 73, 116 L.Ed.2d 47 (1991).

[5]*Id.*

A grant of summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[6]  Summary judgment should be granted where any essential element of the plaintiff's case is without factual support.[7]  Similarly, with respect to a motion to dismiss, appellate review is the same as that applied on the trial level.  If the plaintiff can prove no set of facts in support of her claims that would entitle her to relief, dismissal is proper.[8]

### III.

The points of error that the plaintiff attributes to the district court are based primarily on sophisticated legal issues.  Although these questions have an undeniable academic appeal, we need not address them here.  Instead, the disposition of this case turns on the plaintiff's failure to present any evidence that demonstrates that she has been the victim of religious discrimination.[9]

The heart of Dr. Burns-Toole's case is 42 U.S.C. § 1983.  An action brought under § 1983 against a state actor in his individual capacity, however, is subject to the defense of qualified immunity.  The district court dismissed the § 1983 claim because of the plaintiff's failure to plead facts with adequate particularity sufficient to overcome that immunity as concerns Drs. Byrne and Shamblin.

The cloaking of state actors with a qualified immunity is grounded in the belief that a government cannot operate efficiently if its employees and agents are subjected to the costly and time-consuming rigors of trial and discovery.[10]  Instead, state actors should be able to act freely, within the bounds prescribed by law, but without the fear of consequences.  The absence of this

---

[6] Fed.R.Civ.P. 56(c).

[7] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265, 274 (1986).

[8] *Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir.), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990).

[9] *See Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 172 n. 2 (5th Cir.1985) (a narrow ground for decision renders "a number of latent and potentially thorny issues" unnecessary for disposition of the case).

[10] *See Harlow,* 457 U.S. at 818-19, 102 S.Ct. at 2738-39, 73 L.Ed.2d at 410-11.

immunity would, as Judge Learned Hand has said, "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."[11]

The burden is on the plaintiff to overcome a defendant's defense of qualified immunity.[12] To do so, the plaintiff must show that the defendants' conduct was not objectively reasonable and, further, that the defendants violated clearly established law.[13]

Moreover, the plaintiff must plead specific facts with a level of particularity so that they would, if proved, warrant the relief she seeks.[14] We have previously explained the plaintiff's obligation:

> In cases against government officials involving the likely defense of immunity we require of trial judges that they demand that the plaintiff's complaints state with factual detail and particularity the bases for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.[15]

In other words, Dr. Burns-Toole cannot prevail with mere conclusory statements evidencing only a personal belief that the defendants were motivated by an impermissible animus.

The district court concluded that the plaintiff failed to meet this burden. Dr. Burns-Toole founds her allegations of religious discrimination on one statement, a statement which does nothing to support her legal claims. The statement, relayed by Dr. Poindexter to her, allegedly was made by Dr. Shamblin, one of the examiners who failed her. According to Dr. Poindexter, Dr. Shamblin had stated, "Who did she think she is," with regard to her request for a special accommodation.[16]

This remark might reflect a hostility towards those who request special accommodations. It

---

[11]*Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

[12]*Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983).

[13]*Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982).

[14]*See Jacquez v. Procunier,* 801 F.2d 789, 791 (5th Cir.1986).

[15]*Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985).

[16]It is true that Dr. Burns-Toole also contends that Dr. Shamblin said to her directly, "You're going to be here next year." This remark, however, does nothing to bolster her claim beyond the "who does she think she is" statement.

even may reflect a hostility towards the plaintiff as an individual. The statement is not, however, probative of whether the plaintiff was the victim of discrimination on the basis of her religion. She has presented nothing that could lead to this conclusion.

Moreover, Dr. Burns-Toole has failed to tie this statement to any adverse action taken by Shamblin, Byrne, or the T.S.B.D.E., let alone any action that was motivated by a discriminatory animus. Implicit in her claim is that Dr. Shamblin failed her because of her request for a special accommodation. Yet, she has not countered Dr. Shamblin's assertion that he was unaware of her religious beliefs at the time he graded her exam.[17] In addition, she has not addressed the damaging evidence that two other impartial examiners voted to fail "Applicant # 7." She has, to date, brought no claims against them.

The paucity of her evidence notwithstanding, Dr. Burns-Toole cannot overcome a fundamental causation problem: She failed the test the next time she took it, and this time she failed a different portion of the test. In this second instance, three examiners against whom the plaintiff has made no allegations voted to fail her. She had not sought a religious accommodation for this examination and she has not alleged that the examiners failed her because of her request two years earlier. The failure on the second test cuts against her argument that, but for the discriminatory animus directed at her, she would have passed the first test.

The plaintiff seeks to side-step her lack of evidence by attacking the standard that the district court applied to her claim. Specifically, she asks us to revisit the case of *Elliott v. Perez*[18], in which the Fifth Circuit adopted the "heightened pleading standard" in causes of action brought under § 1983, and reevaluate it in the light of the Supreme Court's recent decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit.*[19]

---

[17]Dr. Shamblin and Dr. Byrne filed affidavits with the district court in which they stated that they had no knowledge of the plaintiff's religion at the time she tested or was graded.

[18]751 F.2d 1472 (5th Cir.1985).

[19]In that case, the Court held that the heightened pleading standard was inconsistent with the notice pleading set up by the Federal Rules of Civil Procedure in a suit against a municipality. --- U.S. ----, ---- - ----, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517, 523-24 (1993). The Court, however, explicitly reserved the question of whether the heightened pleading standard could still

We decline this invitation. Under the most generous standard applicable to a motion for summary judgment, Dr. Burns-Toole could not prevail. She has, in no way, created an issue of material fact on whether the defendants' conduct was sufficient to sustain a § 1983 claim.[20]

The plaintiff nonetheless argues that the district court should have recognized the abrogation of the defendants' qualified immunity by Texas statute[21]. That statute provides immunity for any member of the T.S.B.D.E., its employees, or witnesses called to testify on its behalf in the absence of fraud, conspiracy, or malice.[22] Dr. Burns-Toole argues that because she pleaded conspiracy, the statute waives the immunity asserted by the defendants.

The statute is not a waiver of immunity at all but, rather, a statement explicitly granting immunity. In those circumstances where fraud, conspiracy, or malice are pleaded, the statute would not apply at all. The purpose of the statute, as stated plainly on its face, is to grant immunity to board members so that they will not be subjected constantly to lawsuits.[23] If we were to read Article 4551j as a waiver of the state's immunity, it would be a striking departure from the principle that when a state seeks to waive its immunity, it must do so by "the most express language or by such overwhelming implication from the text...."[24] The statute at issue here does not cross that strict threshold.

## IV.

That leaves only the plaintiff's claim under § 1985(3) that the defendants conspired to deprive

---

apply to suits against individual state officials asserting qualified immunity. *Id.* at ----, 113 S.Ct. at 1162, 122 L.Ed.2d at 523.

[20]In the light of Burns-Toole's failure to meet even the general summary judgment standard, the district court was justified in dismissing the suit against the defendants in their individual and official capacities.

[21]Tex.Rev.Civ.Stat.Ann. Article 4551j (West 1993).

[22]*Id.*

[23]The unambiguous provision stating the law's purpose reads: "This immunity is enacted to relieve and protect the persons named from being harassed and threatened with legal action while attempting to perform official duties." *Id.*

[24]*Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 239-40, 105 S.Ct. 3142, 3145-46, 87 L.Ed.2d 171, 178 (1985).

her of her freedom to practice religion. Dr. Burns-Toole asks us to join the legal debate concerning the reach of § 1985 and address specifically whether it applies to religious discrimination.[25] That debate, however interesting, is unnecessary to the resolution of the present case.

In order to assert a claim under § 1985(3), a plaintiff must allege some class-based animus. At that point, the court can decide whether the class against which the defendants allegedly discriminated is within the parameters of § 1985(3). In the case at hand, Dr. Burns-Toole has wholly failed to identify evidence which shows such class-based discrimination. She contends that she was discriminated against because she is a Seventh Day Adventist. She has failed, however, to present any evidence in support of the proposition that the defendants discriminate against Seventh Day Adventists as a class.

The evidence she has offered hurts rather than helps her case. The board granted her request for a special day on which she could take the examination and her request for more time. A typical case within this context would have alleged discrimination if the plaintiff and similarly situated class members were forced to a choice between their religion and the scheduled testing dates. Here, however, the defendants saved Burns-Toole from that dilemma by granting her a special accommodation. In sum, her evidence—so wanting as support for her § 1983 action—is even weaker with regard to a showing of class-based discrimination under § 1985(3).[26]

V.

Finally, the plaintiff charges that the district court committed error when it dismissed her state

---

[25]There is little doubt that the reach of § 1985 poses an interesting question. Since the Supreme Court stated in *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971), that a cause of action brought under § 1985(3) requires an allegation of conspiracy motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus," scholars and judges have attempted to define the parameters of "otherwise class-based". Subsequent decisions have addressed this phrase in particular contexts, but refused to indicate its outside boundaries. *See, e.g., United Brotherhood of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (Court refused to extend § 1985(3) to conspiracies motivated by commercial or economic views, status, or activities); *Bray v. Alexandria Women's Health Clinic,* --- U.S. ----, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (Court refused to extend § 1985(3) to conspiracies against women seeking abortions).

[26]Although the district court granted the defendants' motion to dismiss with respect to the § 1985 claim, it should be clear from our discussion that the evidence presented could not get Burns-Toole past summary judgment on this point either.

law claims, rather than exercise its supplemental jurisdiction, in spite of the fact that the statute of limitations had run. A district court may entertain state law claims pursuant to its "supplemental jurisdiction," provided that the claims arise from the case or controversy over which the district court had original jurisdiction.[27] When all federal claims are dismissed—i.e., those over which the district court had original jurisdiction—the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims.[28]

The wide discretion afforded the trial judge translates into deference by a reviewing court: "We do not lightly disturb a district court's § 1367 determination to remand state law claims."[29] We will not do so here. Based upon our review and analysis of the evidence, that the statute of limitations has run on Burns-Toole's state law claims hardly dictates a result which we, in the interest of justice, cannot countenance.

For the foregoing reasons, the district court judgment is

AFFIRMED.

---

[27]28 U.S.C. § 1367(a).

[28]*See Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993) (per curiam).

[29]*Id.*