HOMEOWNER/CONTRACTOR
CONSULTANTS, INC.

v.

THE ASCENSION PARISH PLANNING
and ZONING COMMISSION, et al.

No. CIV. A. 97–356–B–M1.

United States District Court,
M.D. Louisiana.

Jan. 6, 1999.

386

Robert Dean Hoover, Baton Rouge, LA, for Plaintiff.

Mathile W. Abramson, Jay Morton Jalenak, Jr., Bradley Charles Myers, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

POLOZOLA, Chief Judge.

This matter is before the Court on a Rule 12(b)(6) motion to dismiss filed by the individual members[1] of the Ascension Parish Planning and Zoning Commission ("Planning Commission"). These defendants seek dismissal of the claims against them for the actions brought against them in their individual capacities on the basis of immunity and/or failure to state a claim. For the reasons which follow, the defendants' motion is granted.

## FACTS AND PROCEDURAL HISTORY

Plaintiff[2] filed this suit after defendants refused to approve the plaintiff's preliminary plat for a proposed subdivision development in Ascension Parish. Plaintiff contends that he planned to build starter homes in the subdivision.[3] Plaintiff alleges that the defendants' actions violated its statutory and constitutional rights.

1. The individual members are Harvey Kling, James Alton, Kenneth R. Lambert, Clint P. King, Debbie Lacour, Brent Dix, Michael Watson, Glenn Bourgeouis and Brent Phillips.

2. Plaintiff in this case is Homeowner/Contractor Consultants, Inc.

3. The facts set forth herein are those alleged in the complaint. For purposes of this motion to dismiss, they must be accepted as true under

On November 25, 1996, plaintiff entered into a purchase agreement with Robert Poche and Charles and Carolyn Braud to buy property located on Bluff Road and C. Braud Road in Ascension Parish (the "Poche/Braud property"). Plaintiff then entered into three other purchase agreements to purchase property in the same vicinity. At least two of these three additional tracts of land required a right of passage through the Poche/Braud property. Plaintiff contends it planned to subdivide these properties and erect homes for sale. Thus, acquisition of the Poche/Braud property was critical to the plaintiff's plan for development of the subdivision. Final sale of the Poche/Braud property was to occur on January 30, 1997 and was contingent upon receipt of approval of the subdivision plans by the Planning Commission.

On November 20, 1996, plaintiff filed a preliminary plat of the proposed subdivision development ("the Bluffs") with the Planning Commission. The preliminary plat did not contain a federal wetlands determination as required by Ascension Parish Subdivision Regulation 40.200(L).[4] Plaintiff claims it did not include the wetlands determination with the preliminary plat because it was "common understanding" that this regulation was routinely ignored as a matter of practice at the preliminary plat proposal stage. The plaintiff states it was the practice of the Planning Commission to require submission of the wetlands determination only as part of the final plat proposal stage of the application process.[5]

The Ascension Parish Council held a meeting on or about December 2, 1996, wherein defendant Brent Dix and Councilman Poche discussed the need for a moratorium to address the issues posed by developments such

Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4. Though the text of this regulation was not submitted into the record, the parties concur that it required a federal wetlands determination for all preliminary plats submitted to the Planning Commission.

5. Complaint, ¶ VI.

as the Bluffs.[6]

On December 11, 1996, the Planning Commission held a public meeting to discuss plaintiff's proposal. Adjacent landowners and Councilman Jeff Poche expressed opposition to the proposed subdivision development and to development of any new subdivisions in Ascension Parish. Councilman Poche allegedly stated that the Bluffs would turn the area into "projects" because of the small lot sizes designated in the plat.[7] A decision on the preliminary plat was deferred.

On January 2, 1997, allegedly at Councilman Poche's prompting, the Ascension Parish Council enacted an emergency ordinance which substantially increased the required minimum lot sizes for subdivisions in Ascension Parish. The newly required minimum lot sizes were approximately double those in plaintiff's proposed subdivision.[8]

On January 15, 1997 the Planning Commission refused to approve the plaintiff's proposed subdivision development because the federal wetlands determination was not included in the preliminary plat application as required under Ascension Parish Subdivision Regulation 40.200(L). Plaintiff alleges that thereafter, its engineer was told that in order to obtain approval of the proposed subdivision development, the lot sizes had to be substantially increased in compliance with the aforementioned emergency ordinance.[9] At this same meeting, the Planning Commission allegedly approved another preliminary subdivision plat submitted by a third party which lacked a federal wetlands determination at the time of application.[10]

Finally, on January 28, 1997, Robert Poche and the Brauds declined to grant the plaintiff additional time under the purchase agreement to gain approval of its subdivision plan. Thus, the purchase agreement terminated on January 30, 1997.

On February 27, 1997, the Council made permanent the emergency ordinance regarding minimum subdivision lot sizes.[11]

Plaintiff failed to appeal the decision of the Planning Commission to the Ascension Parish Appeal Board Committee ("Appeal Board"), setting forth two justifications. First, the Appeals Board, though established in 1993, was for practical purposes non-existent prior to its first meeting on February 24, 1997. Second, because the purchase agreement for the Poche/Braud property had expired, and because this property was necessary for a right of passage, plaintiff had no "appealable remedy."

Plaintiff alleges that the Planning Commission violated its statutory and constitutional rights in: (1) denying its preliminary plat proposal; (2) in applying Ascension Parish Subdivision Regulation 40.200(L) inconsistently; and, (3) applying the ordinance requiring the larger minimum lot sizes which were well beyond the lot sizes included in the plaintiff's proposal.[12] Specifically, plaintiff alleges the following violations under federal law: (1) denial of substantive due process; (2) denial of procedural due process; (3) denial of equal protection; (4) conspiring to deprive plaintiff of substantive and procedural due process, as well as equal protection rights;[13] and (5) violations of the Fair Housing Act ("FHA").[14] Plaintiff also raises state law claims.

Defendants filed this motion to dismiss the claims against them in their individual capacities on the basis of absolute legislative immunity or, in the alternative, qualified immunity.

## MOTION TO DISMISS

A motion to dismiss may be granted "only if it appears that no relief could be granted

6. Complaint, ¶ VII.

7. Complaint, ¶ VIII.

8. Complaint, ¶ IX.

9. Complaint, ¶ X; Defendants' Answer, ¶ 10.

10. Complaint, ¶ XI.

11. Complaint, ¶ XIV.

12. As will be discussed herein, this ordinance enacted subsequent to the plaintiff's submission of the preliminary plat was never applied to the plaintiff.

13. 42 U.S.C. § 1985 (1994).

14. 42 U.S.C. § 3601–3631. (1994 & Supp.1998).

under any set of facts that could be proven consistent with the allegations." [15] When ruling on a motion to dismiss, the Court must accept the facts in the complaint as true and construe said facts in the light most favorable to the plaintiff. The key issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the facts set forth in the complaint taken as true state a claim upon which relief may be granted.[16]

## LAW AND ANALYSIS

Defendants contend they are entitled to absolute legislative immunity, or in the alternative, qualified immunity. In *Bogan v. Scott–Harris,*[17] the United States Supreme Court recently set forth standards to be followed in determining whether absolute or qualified immunity applies. The Fifth Circuit has set forth the following standard to be followed in zoning-related cases: "We have long insisted that review of municipal zoning is within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of federal courts." [18] This Court has also addressed many of the issues raised in this case in its recent opinion in *Summerchase Ltd. Partnership I v. City of Gonzales.*[19]

### (I) *Absolute Immunity*

■ Defendants contend that they are entitled to absolute immunity under 42 U.S.C. § 1983 with regard to the decision to deny

approval of the plaintiff's preliminary plat for the proposed subdivision on January 15, 1997 because the decision to deny approval was legislative in nature.[20]

■ In *Bogan v. Scott–Harris,* the Supreme Court enunciated the appropriate analysis to be used in determining whether the actions of a local legislative body are legislative versus administrative.[21] The Supreme Court in *Bogan* stated that absolute legislative immunity attaches to all actions taken in the "sphere of legitimate legislative activity." [22] Whether an act is legislative turns on the nature of the act rather than on the motive or intent of the official performing it.[23] The inquiry turns on whether the act was "quintessentially legislative." [24] The Supreme Court found that the ordinance in question fell within the ambit of traditional legislative activity, since it reflected a "discretionary, policymaking decision" and could have "prospective implications that reach well beyond" a particular individual.[25] In short, *Bogan* made clear that the **nature of the act,** rather than the intent or motive, is determinative.

In *Cutting v. Muzzey,*[26] the First Circuit made clear that in determining entitlement to legislative immunity, the court must first identify the precise action of the local governing body that is targeted in the complaint. Throughout their memoranda, defendants repeatedly refer to the actions of the Planning Commission at issue as "denial of the [pre-

---

15. *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir.1995). *See also Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521 (5th Cir. 1994).

16. *John Doe v. Hillsboro Indep. Sch. Dist.,* 81 F.3d 1395 (5th Cir.1996); *See also Campbell v. City of San Antonio,* 43 F.3d 973 (5th Cir.1995).

17. 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).

18. *FM Properties Operating Co. v. City of Austin,* 93 F.3d 167, 173–174 (5th Cir.1996), *citing Shelton v. City of College Station,* 780 F.2d 475, 477 (5th Cir.), *certs. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986).

19. 970 F.Supp. 522 (M.D.La.1997).

20. Defendants' Memorandum in Support of Motion to Dismiss, p. 4 (*citing Hughes v. Tarrant County Texas,* 948 F.2d 918, 920 (5th Cir.1991)).

21. The Supreme Court in *Bogan* made clear that local legislators are absolutely immune from suit under Section 1983 for their legislative activities.

22. *Bogan,* 118 S.Ct. at 972, *citing Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951).

23. *Bogan,* 118 S.Ct. at 973.

24. *Bogan,* 118 S.Ct. at 973.

25. *Bogan,* 118 S.Ct. at 973.

26. 724 F.2d 259 (1st Cir.1984). *Cutting* was cited with approval by the Fifth Circuit in *Hughes.*

liminary plat]" and "failure to provide a waiver" with regard to the newly enacted ordinance.[27] A review of the complaint reveals that the plaintiff did not allege that it ever requested a waiver from the ordinance requiring larger lot sizes, which was enacted on an emergency basis following submission of the plaintiff's preliminary plat. References to a "request for a waiver from the ordinance" represent a mischaracterization of the facts in this case. Rather, the target of the plaintiff's complaint is that the Planning Commission refused to approve its preliminary plat for the proposed subdivision development. This refusal will be the focus of inquiry.[28]

The standard set forth by the Fifth Circuit in *Hughes v. Tarrant County Texas* [29] comports with *Bogan*. The following tests for legislative immunity were cited with approval in *Hughes*:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as the "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state action." If

the action involves establishment of a general policy, it is legislative; if the action "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative.[30]

The Fifth Circuit has strictly applied the aforementioned tests set forth in *Hughes*. Applying the *Hughes* rationale to the facts of this case, the Court finds that the decision by the Planning Commission not to approve the preliminary plat was not one with broad policy implications. The facts used in the decisionmaking were specific and related only to the plaintiff. The Planning Commission's action involved enforcement of existing regulations and did not establish general policy. Thus, the Court finds that the decision by the members of the Planning Commission to deny approval of the plaintiff's preliminary plat for the proposed subdivision development was administrative in nature. Therefore, the defendants are not entitled to absolute legislative immunity for the action.

The cases cited by defendants in support of their claim for absolute legislative immunity are distinguishable from the present case. These cases involve zoning decisions and the imposition of moratoria. Such actions have long been considered functionally legislative.[31]

It is also important to distinguish the cases of *South Gwinnett Venture v. Pruitt* [32] and *Shelton III v. City of College Station* [33] from

**27.** Memorandum in Support of Motion to Dismiss, Rec. Doc. No. 19.

**28.** Plaintiff states that after the preliminary plat was not approved, he was told that any plat submitted in the future would require compliance with the minimum lot sizes set forth in the new ordinance. Plaintiff's preliminary plat was not approved because it did not include a wetlands determination as required under Ascension Parish Regulation 40.200(L). Whether the plaintiff would or would not have been required to comply with the emergency ordinance is conjecture and is not properly before the Court. The purchase agreement expired, and the plaintiff did not submit another plat for consideration.

**29.** 948 F.2d 918, 920 (5th Cir.1991).

**30.** 724 F.2d 259, 261 (1st Cir.1984), *citing* Developments in the Law–Zoning, 91 Harv.L.Rev. 1427, 1510–11 (1978).

**31.** *See Brown v. Crawford County Ga.*, 960 F.2d 1002 (11th Cir.1992)(enactment of a temporary

moratorium of general application for a specified area protected by absolute immunity); *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir. 1986), *certs. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986)(denial of a request for a variance from a zoning ordinance by an individual landowner was protected by absolute immunity); *Calhoun v. St. Bernard Parish*, 937 F.2d 172 (5th Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992)(enactment of various construction moratoria, though it amounted to spot zoning, was protected by absolute immunity).

**32.** 491 F.2d 5 (5th Cir.1974), *cert. denied* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).

**33.** *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir.1986), *certs. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986).

the present case. In *Gwinnett*, the plaintiffs applied to the county planning commission to have their property rezoned from partly residential and partly commercial to an apartment classification, which request was denied. On appeal, the Fifth Circuit saw "no viable distinction between zoning board functions involved in the adoption of a comprehensive zoning plan and those exercised in the reclassification of a piece of property under an existing plan." [34] The Fifth Circuit apparently viewed the action as an extension of zoning, which is clearly legislative in nature. Similarly, *Shelton* involved the denial of a request for a variance from a zoning ordinance which the zoning board denied. Although the decision amounted to "spot-zoning," the Fifth Circuit viewed the action as a zoning decision which is "legislative or quasi-legislative" in nature. Both *Shelton* and *Gwinnett* involved zoning decisions, which have traditionally been considered a legislative activity. The present case involves the denial of a request for approval of a preliminary plat for a subdivision development. The Fifth Circuit has not accorded absolute legislative immunity to such an action by a local governing body.[35]

### (II) *Qualified Immunity*

■ Defendants argue in the alternative that they are entitled to the defense of qualified immunity. Qualified immunity is available for non-legislative and administrative acts of government officials. In *Sanchez v. Swyden*,[36] the court noted that there are strong policy considerations underlying this defense, namely the "deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties." [37] The test for qualified immunity in cases filed under 42 U.S.C. § 1983 involves a two-step inquiry. First, the court must determine whether a public official's conduct deprived a Section 1983 plaintiff of a "clearly established" constitutional or statutory right.[38] The constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right.[39] "The Supreme Court has warned against vague or general assertions of constitutional rights and has required a Section 1983 plaintiff to state with specificity the constitutional right that has allegedly been violated." [40] Second, the defense of qualified immunity may be asserted even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable.[41] The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a constitutional scholar.[42]

Plaintiff asserts the following federal claims: (1) denial of procedural due process; (2) denial of substantive due process; (3) denial of equal protection; (4) conspiracy to

**34.** *South Gwinnett*, 491 F.2d at 7, *citing Shenk v. Zoning Comm'n of the Dist. of Columbia*, 440 F.2d 295 (D.C.Cir.1971).

**35.** Defendants cite Louisiana Revised Statutes 33:101.1 as support for characterization of the defendants' actions as legislative rather than administrative. That statute provides that the act of approving or disapproving a subdivision plat is declared a legislative function involving the exercise of legislative discretion by a planning commission. Defendants further cite *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407 (11th Cir.1989), in which the Eleventh Circuit looked to both federal and state law in determining whether the actions at issue were legislative in nature. This Court finds that Fifth Circuit jurisprudence is dispositive, and the action of the Planning Commission is administrative in nature.

**36.** 139 F.3d 464 (5th Cir.), *cert. denied* —— U.S. ——, 119 S.Ct. 170, 142 L.Ed.2d 139 (1998).

**37.** *Sanchez*, 139 F.3d at 467.

**38.** *Sanchez*, 139 F.3d at 466, *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

**39.** *Sanchez*, 139 F.3d at 466, *citing Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

**40.** *Sanchez*, 139 F.3d at 467, *citing Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987).

**41.** *Sanchez*, 139 F.3d at 467, *citing Mouille v. City of Live Oak*, 918 F.2d 548, 551 (5th Cir. 1990) and *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990).

**42.** *Sanchez*, 139 F.3d at 467, *citing Harlow*, 457 U.S. at 815–817, 102 S.Ct. at 2736–38; *Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir.1994).

deprive plaintiff of constitutional rights; and (5) violations of the FHA.

### A. *Procedural Due Process*

■ Plaintiff claims that it was denied procedural due process on the following basis: (1) "Since the wetlands determination was required of some proposed developments, but not of others..., there is a lack of ascertainable standards such that [the plaintiff] was not given fair and reasonable opportunity to be heard and present its proposal...;"[43] (2) plaintiff's right to procedural due process was violated by the Planning Commission's "attempt to impose the ordinance enlarging the size of lots in an ex post facto manner;" and (3) lack of an appealable remedy, since the purchase agreement had expired and the appeals board was not in actual existence until February 24, 1997.[44]

In *Jackson Court Condominiums, Inc. v. City of New Orleans,*[45] the Fifth Circuit set forth the following factors to determine whether procedural due process rights were violated. If the action by the governing body is administrative/adjudicative, procedural due process rights may attach. "**These procedural rights follow only if the landowner establishes a property right created by state or local law.**"[46] The plaintiff in *Jackson* brought suit alleging denial of procedural and substantive due process on a moratorium and denial of a waiver. The Fifth Circuit stated:

> The dispositive inquiry here is whether the moratorium was a legislative or administrative action. If it was administrative, [plaintiff] might have been owed some level

of procedural due process. However, it is well established law that once an action is characterized as legislative, procedural due process requirements do not apply.[47]

This Court has previously determined that the action of the Planning Commission in denying approval of the plaintiff's preliminary plat was an administrative decision. Under *Jackson Court,* procedural due process rights may attach. Thus, the Court must determine whether the plaintiff had a protected property interest created under state or local law.

■ In *Standard Materials, Inc. v. City of Slidell,*[48] the Louisiana First Circuit Court of Appeal addressed the issue of property interests and substantive due process in the zoning context. Although *Standard* involved substantive rather than procedural due process, it is proper to use the court's analysis in the present case because the court relied upon Supreme Court cases involving procedural due process.[49] The court in *Standard* held:

> In the zoning context, a property interest requires more than a "unilateral expectation" that a permit or license will be issued; instead, there must be a "legitimate claim of entitlement" to the benefit in question. [citations omitted]. A landowner has a legitimate claim of entitlement when, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application or permit would have been granted. To have such a property interest supporting a substantive due process claim, Standard must show either that it possessed a legitimate claim

---

**43.** Plaintiff states in its complaint that Ascension Parish Subdivision Regulation 40.200(L) lacks ascertainable standards such that it violated its right to procedural due process. However, there is nothing in the particular regulation which the plaintiff complains is unclear, vague or confusing. Rather, plaintiff appears to complain that the alleged inconsistent *application* of the regulation makes unclear precisely what is required of an applicant to obtain approval of its preliminary plat. The clarity of the regulation itself, however, is not challenged. Plaintiff fails to state a claim challenging the standards set forth in the regulation.

**44.** Complaint, ¶¶ XIX, XX, and XXI.

**45.** 874 F.2d 1070 (5th Cir.1989).

**46.** *Jackson Court,* 874 F.2d at 1074 (emphasis supplied).

**47.** *Jackson Court,* 874 F.2d at 1074.

**48.** 700 So.2d 975 (La.App. 1st Cir.1997).

**49.** Specifically, the line of cases cited in *Standard Materials* rely upon *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Both of these Supreme Court cases involved the protection of procedural due process in the context of a property interest in employment.

of entitlement to a permit to operate a concrete batch plant at the Bayou Liberty site or a justifiable expectation that the City would issue the permit.[50]

In determining entitlement or expectation, the courts look to state or local law, as required under *Board of Regents of State Colleges v. Roth.*[51]

A review of the cases which were cited in *Standard* are illustrative of the appropriate inquiry regarding a property interest. In *RRI Realty Corp. v. Incorporated Village of Southampton*,[52] the Second Circuit noted that land regulation cases involving applications to local regulators have applied the *Roth*[53] entitlement test to inquire whether an entitlement exists in *what has been applied for* (i.e., approval of a preliminary plat for a proposed subdivision).[54] Continuing its analysis, the court stated:

> If federal courts are not to become zoning boards of appeals...the entitlement test of *Yale Auto Parts*—"certainty or a very strong likelihood" of issuance—must be applied with considerable rigor. Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case... The "strong likelihood" aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised.[55]

Even though there was evidence of statements of officials that the building applica-tion's approval was forthcoming, the fact that the local review board had *discretion* to deny RRI's application for the permit was dispositive of the issue. The court found that the jury's attention at the trial court level "had been improperly focused primarily on the probability that the permit would be issued without adequate consideration of the discretion enjoyed by the issuing authority." [56]

The issue of a property interest in the context of due process was recently addressed by the Eighth Circuit in *Bituminous Materials, Inc. v. Rice County, Minnesota:*

> A claim of entitlement arises, for these purposes, when a statute or regulation places substantial limits on the government's exercise of its licensing discretion. Thus, the holder of a land use permit has a property interest if a state law or regulation limits the issuing authority's discretion to restrict or revoke the permit by requiring that the permit issue upon compliance with terms and conditions prescribed by statute or ordinance.[57]

The ordinance in question in *Bituminous* provided that the permit "may" be granted. Therefore, the ordinance did not limit the County Board's discretion to deny or restrict a permit sufficiently to grant a property interest.

In the present case, the Planning Commission certainly had discretion to deny the plaintiff's preliminary plat for the subdivision development because it did not contain the federal wetlands determination as required under Ascension Parish Subdivision Regulation 40.200(L). Plaintiff freely admits that it did not include the wetlands determination.

**50.** *Standard Materials*, 700 So.2d at 986.

**51.** 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**52.** 870 F.2d 911 (2d Cir.1989), *cert. denied* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).

**53.** *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**54.** Plaintiff also asserts a property interest in the purchase agreement and cites *State Dep't of Transp. and Dev. v. Jacob*, 483 So.2d 592 (La. 1986), as support. *Jacobs* involved a determination of what constitutes a property interest for purposes of compensation upon expropriation by the state. The Court held that an unrecorded lease was a property interest in the context of the state "takings" clause. This Court concurs with the reasoning set forth by the Second Circuit in *RRI Realty Corp.*, *supra*, and *Orange Lake Assocs.*, *supra*, and finds that it was the approval of plaintiff's proposed development that is the property interest at issue for purposes of due process.

**55.** *RRI Realty*, 870 F.2d at 918.

**56.** *RRI Realty*, 870 F.2d at 919–920.

**57.** *Bituminous Materials v. Rice County*, 126 F.3d 1068, 1070 (8th Cir.1997).

The plaintiff's belief that it was common practice that the Planning Commission not require the wetlands determination until submission of the final plat is immaterial. It is clear that the Planning Commission had the discretion to deny approval of a preliminary plat if it did not comply with applicable regulations. Thus, the Court finds that the plaintiff did not have a property interest in obtaining approval of the preliminary plat for the proposed subdivision development.

The facts in *Orange Lake Associates, Inc. v. Kirkpatrick* [58] are similar to the present case. In *Orange Lake*, the plaintiff submitted an initial application for a proposed residential condominium development consisting of 515 residential units covering 100 acres. During the subsequent months, numerous deficiencies were cited for correction. Before any approval of the proposed development was obtained, the Town Planning Board adopted a Master Plan which reduced maximum densities for a number of properties, including the plaintiff's.[59] The Second Circuit affirmed the lower court's finding that the plaintiff could not make out a due process claim because it had no vested property interest in its initial development application.[60] Such is the case here. Plaintiff was not entitled to procedural due process, and defendants are entitled to qualified immunity in their individual capacities as to this claim.

■ Even if the plaintiff was entitled to procedural due process, defendants would nevertheless be entitled to qualified immunity because the action of the Planning Commission in denying approval of the plaintiff's preliminary plat was "objectively reasonable." Plaintiff failed to comply with Ascension Parish Subdivision Regulation 40.200(L)

when it failed to include a federal wetlands determination upon submission of the preliminary plat.

### B. Substantive Due Process

■ The Court now turns to plaintiff's substantive due process claim. Plaintiff contends that "the grounds for denial of the [preliminary plat] were arbitrary" since the wetlands determination was required of the plaintiff, but not for others. Stated differently, the decision of the Planning Commission "constituted an ad hoc application" of the wetlands determination regulation.

The Fifth Circuit has stated that "the outside limit upon a state's exercise of its police power and zoning decisions is that they must have a rational basis." [61] In *FM Properties*, the court stated that "such government action comports with substantive due process if the action is rationally related to a legitimate government interest." [62] "Only if such government action is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare,' may it be declared unconstitutional." [63] Thus, the issue to be determined is "whether a rational relationship exists between the [action] and a conceivable legitimate governmental objective." [64]

The Court must determine whether there was a rational basis for the Planning Commission's refusal to approve the plaintiff's preliminary plat. Plaintiff admits that Ascension Parish Subdivision Regulation 40.200(L) required a federal wetlands determination to accompany all preliminary plat submissions. Plaintiff also admits that it failed to include the wetlands determination at the preliminary proposal stage. Clearly

---

**58.** 21 F.3d 1214 (2d Cir.1994).

**59.** The defendants were granted legislative immunity with regard to their adoption of the Master Plan and zoning law amendments, since the Master Plan affected not only the plaintiff's property, but almost the entire area surrounding Orange Lake. Thus, this case is distinguishable from the case at bar insofar as the issue of immunity.

**60.** *Orange Lake*, 21 F.3d at 1220, 1224.

**61.** *Jackson Court*, 874 F.2d at 1077, *citing Shelton*, 780 F.2d at 482.

**62.** *FM Properties*, 93 F.3d at 174, *citing Schafer v. City of New Orleans*, 743 F.2d 1086, 1089 (5th Cir.1984).

**63.** *FM Properties*, 93 F.3d at 174, *citing Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926).

**64.** *FM Properties*, 93 F.3d at 174–175 (citations omitted).

394

there was a "conceivable rational basis" for the Planning Commission to deny approval of the plaintiff's preliminary plat, because the plaintiff failed to comply with the applicable regulation.

Plaintiff argues that the true reason the Planning Commission refused to approve his preliminary plat was the opposition and concerns of adjacent landowners.[65] As stated in *FM Properties*, the " 'true' purpose of the [policy], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis."[66] Defendants in their individual capacities are entitled to qualified immunity as to plaintiff's claim of denial of substantive due process.

### C. Equal Protection

 Plaintiff claims it was denied equal protection when the Planning Commission granted another developer the right to subdivide a similar tract of property, but denied the plaintiff's application. Generally, the equal protection clause requires that a state and its subdivisions apply legislation and actions evenhandedly to all persons similarly situated in a designated class.[67] Plaintiff relies on an unreported decision in *Bayou Fleet, Inc. v. Alexander*[68] which held that a "violation of equal protection may be shown where a person who is not a member of a particular group of individuals is deliberately singled out for disparate treatment from others similarly situated based on impermissible considerations such as to punish the exercise

of constitutional rights or malicious or bad faith intent to injure."[69] "Such situations can create an illegitimate 'class of one.' "[70] The court in *Bayou Fleet* relied upon the Seventh Circuit's decision in *Esmail v. Macrane*.[71] This Court finds that *Esmail* does not apply under the facts of this case. Furthermore, the Fifth Circuit has not embraced the holding in *Esmail*.[72] Even accepting as true the allegations set forth by the plaintiff in its complaint, the allegations do not support any kind of "orchestrated campaign" of vindictiveness, "sheer malice" or spite against the plaintiff. Thus, the Court finds that plaintiff failed to state a claim that his right to equal protection was violated.[73]

### D. Conspiracy to Deprive Plaintiff of Constitutional Rights

Plaintiff also asserts that Jeff Poche, a member of the Ascension Parish Council, and the Council as an entity, conspired with members of the Planning Commission to deprive the plaintiff of its rights to substantive and procedural due process and to equal protection.[74]

 For reasons previously set forth above, plaintiff has failed to state a claim that he was deprived of substantive or procedural due process, or of equal protection. The Court finds that plaintiff's conspiracy claim is without merit for reasons set forth in *Kaplan v. Clear Lake City Water Authority*[75] which provided:

**65.** Complaint, ¶ VIII.

**66.** *FM Properties*, 93 F.3d at 174, *citing Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239, 246 (1st Cir.1990).

**67.** *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

**68.** No. Civ. A. 97–2205, 1997 WL 625492 (E.D.La.1997).

**69.** 1997 WL 625492, at 14.

**70.** 1997 WL 625492, at 14, *citing Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995).

**71.** *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995).

**72.** Additionally, *Esmail* involved a "campaign of vindictiveness" by the mayor, who held extreme animosity toward the plaintiff. The facts alleged in the *Esmail* complaint indicated that there was an "orchestrated campaign of official harassment directed against [the plaintiff] out of sheer malice." *Esmail*, 53 F.3d at 179.

**73.** Additionally, the Court notes that the plaintiff lacks standing to assert any violations of equal protection on the part of potential purchasers of its intended development. *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir.1986).

**74.** Complaint, ¶ XXIV.

**75.** 794 F.2d 1059 (5th Cir.1986).

Under § 1983 conspiracy can furnish the conceptual spring for imputing liability from one to another. A conspiracy may also be used to furnish the requisite state action. Yet it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient. Here [the plaintiff] has failed to show any such deprivation. Without a deprivation of a constitutional right or privilege, [the defendant] has no liability under § 1983.[76]

Because the plaintiff has failed to show an actual deprivation of a constitutional right, the conspiracy claim is dismissed.

■■■■ To assert a claim of conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." [77] Thus, "the plaintiff must show that the conspiracy was motivated by class-based animus." [78] Plaintiff has failed to allege class-based animus as to the conspiracy claim.[79] Thus, defendants' motion to dismiss the plaintiff's 42 U.S.C. § 1985 claim against them in their individual capacities is granted.[80]

---

**76.** *Kaplan*, 794 F.2d at 1065 (citations omitted).

**77.** *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994).

**78.** *Hilliard*, 30 F.3d at 653, *citing Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).

**79.** The Fifth Circuit in *Burns–Toole* noted that the "reach of Section 1985 poses an interesting question:" *Burns–Toole*, 11 F.3d at 1275, n. 25. The court stated that "[s]ince the Supreme Court stated in *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971), that a cause of action brought under § 1985(3) requires an allegation of conspiracy motivated by 'some racial or perhaps otherwise class-based, invidiously discriminatory aniums,' scholars and judges have attempted to define the parameters of 'otherwise class-based.' " *Burns–Toole*, 11 F.3d at 1275, n. 25.

## E. *Fair Housing Act*

■■■■ Plaintiff's final claim is based on the Fair Housing Act.[81] Plaintiff alleges that defendants violated the Fair Housing Act by refusing to approve plaintiff's preliminary subdivision plat on the basis of "[the Planning Commission's] discriminatory intent to bar starter homes in Ascension Parish and the disparate impact that this would have on low income families and ultimately on minorities." [82] A violation of the FHA may be shown either by proof of discriminatory intent or by a showing of "significant discriminatory effect." [83]

■■■■ Defendants argue that the plaintiff fails to state a claim of disparate treatment or disparate impact under the FHA.[84] The Court finds that the plaintiff has sufficiently alleged a cause of action under the FHA. As recognized in *Meadowbriar Home for Children, Inc. v. Gunn*,[85] "[plaintiff] need only make a short and plain statement of its Fair Housing Act claim." [86] Plaintiff in the present case has done so.[87]

■■■■ Although plaintiff sufficiently states a claim under the FHA, the Court finds that the members of the Planning Commission, in their individual capacities, are entitled to qualified immunity. It was objectively reasonable for the members to deny approval of the plaintiff's preliminary plat on the basis of

---

**80.** Again, the plaintiff lacks standing to assert any violations of equal protection on the part of potential purchasers of its intended development. *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir.1986).

**81.** 42 U.S.C. § 3601–3619, 3631 (1994 & Supp. 1998).

**82.** Complaint, ¶ XXVI.

**83.** *Summerchase*, 970 F.Supp. at 527, *citing Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir.1996).

**84.** Memorandum in Support of Motion to Dismiss, Rec. Doc. No. 19, pp. 23–24.

**85.** 81 F.3d 521 (5th Cir.1996).

**86.** *Meadowbriar*, 81 F.3d at 532.

**87.** Complaint, ¶ XXVI.

failure to include the wetlands determination in conformity with Ascension Parish Subdivision Regulation 40.200(L).

## SUMMARY

For the reasons set forth herein, defendants' motion to dismiss shall be granted, and all federal claims against defendants Harvey Kling, James Alton, Kenneth R. Lambert, Clint P. King, Debbie Lacour, Brent Dix, Michael Watson, Glenn Bourgeouis and Brent Phillips in their individual capacities are hereby dismissed.